NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**SMARTGENE, INC.,**
*Plaintiff-Appellee,*

**v.**

**ADVANCED BIOLOGICAL LABORATORIES, SA,**
AND **ABL PATENT LICENSING TECHNOLOGIES, SARL,**
*Defendants-Appellants.*

---

2013-1186

---

Appeal from the United States District Court for the District of Columbia in No. 08-CV-0642, Judge Beryl A. Howell.

---

Decided: January 24, 2014

---

FREDERICK N. SAMUELS, Cahn & Samuels, LLP, of Washington, DC, argued for plaintiff-appellee. With him on the brief was MAURICE U. CAHN.

ROBERT R. SACHS, Fenwick & West, LLP, of San Francisco, California, argued for defendants-appellants. With him on the brief were MICHAEL J. SACKSTEDER, DANIEL R. BROWNSTONE, and JEFFREY V. LASKER. Of counsel on the

brief was EDWARD W. GOLDSTEIN, Goldstein Law, P.L.L.C., of Houston, Texas.

_____

Before LOURIE, DYK, and TARANTO, *Circuit Judges.*

TARANTO, *Circuit Judge.*

SmartGene, Inc. brought this action against Advanced Biological Laboratories, SA, and ABL Patent Licensing Technologies, SARL (collectively, ABL), seeking a declaratory judgment that it did not infringe two of ABL's patents, U.S. Patent Nos. 6,081,786 and 6,188,988, and that both patents were invalid. The district court granted summary judgment that all claims of both patents were ineligible for patent protection under 35 U.S.C. § 101. *See SmartGene, Inc. v. Adv. Biological Labs., SA*, 852 F. Supp. 2d 42, 62 (D.D.C. 2012), *reconsideration denied*, 915 F. Supp. 2d 69 (D.D.C. 2013). We affirm.

BACKGROUND

Each of the two patents here is entitled "Systems, Methods and Computer Program Products for Guiding the Selection of Therapeutic Treatment Regimens." In each, the key claims are independent Claims 1, 23, and 45, which describe a method, a system, and a computer program, respectively, for guiding the selection of a treatment regimen for a patient with a known disease or medical condition. Claim 1 of the '786 patent reads:

 1. A method for guiding the selection of a therapeutic treatment regimen for a patient with a known disease or medical condition, said method comprising:

(a) providing patient information to a computing device comprising:

 a first knowledge base comprising a plurality of different therapeutic treatment

regimens for said disease or medical condition;

a second knowledge base comprising a plurality of expert rules for evaluating and selecting a therapeutic treatment regimen for said disease or medical condition;

a third knowledge base comprising advisory information useful for the treatment of a patient with different constituents of said different therapeutic treatment regimens; and

(b) generating in said computing device a ranked listing of available therapeutic treatment regimens for said patient; and

(c) generating in said computing device advisory information for one or more therapeutic treatment regimens in said ranked listing based on said patient information and said expert rules.

'786 patent, col. 17, line 49, through col. 18, line 4. Claim 1 of the '988 patent is nearly identical. *See* '988 patent, col. 17, line 53, through col. 18, line 12. Claim 23 in each patent claims "[a] system" rather than a method, but otherwise is similar in content. *See* '786 patent, col. 19, lines 22-45; '988 patent, col. 23, lines 32-59. Claim 45 in each patent has similar content, but claims a "computer program product comprising a computer usable storage medium having computer readable program code means embodied in the medium." *See* '786 patent, col. 20, line 61, through col. 21, line 22; '988 patent, col. 21, lines 16-48. For reasons to be indicated, we need not be more precise about the claims other than claim 1 of the '786 patent.

In May 2008, SmartGene filed this action against ABL, seeking a declaratory judgment that, among other things, the two patents were ineligible for protection

under section 101. ABL counterclaimed, asserting infringement of Claims 1 and 23 of both patents. To establish that an actual controversy existed between the parties, SmartGene's complaint identified a prior lawsuit by ABL against SmartGene, in which ABL's complaint alleged infringement of "at least claim 1 of each of the '786 and '988 Patents." J.A. 59. That earlier infringement action, filed in the Eastern District of Texas, had been dismissed for lack of personal jurisdiction before SmartGene initiated this declaratory-judgment action. The present case was stayed until September 2011 while the Patent and Trademark Office reexamined the '786 and '988 patents on prior-art, but not section 101, grounds. The PTO ultimately concluded that all of the patents' claims were patentable over the prior art presented during the reexaminations.

In December 2011, SmartGene moved for summary judgment that "all of the claims" of the '786 and '988 patents are ineligible for a patent under section 101. Mem. in Supp. of Partial Summ. J.at 1, *SmartGene, Inc. v. Adv. Biological Labs*, SA, No. 08-CV-0642 (D.D.C. Dec. 12, 2011), ECF 47. Expressly asserting that "for the purpose of the § 101 analysis, claim 1 of the '786 patent is representative of all of the claims of the patents-in-suit," SmartGene's motion limited its elaboration of its arguments for ineligibility to that claim. J.A. 381. In its responsive briefing opposing summary judgment, ABL never contested SmartGene's characterization of claim 1 of the '786 patent as representative of all claims of both patents. Opp. to Mot. for Partial Summ. J., *SmartGene*, No. 08-CV-0642 (D.D.C. Dec. 27, 2011), ECF 51. At the oral argument on the summary-judgment motion, ABL did argue that "system" claims require a different analysis from "method" claims. *See* J.A. 2789-91 ("[F]or a system claim, there is a little bit different analysis because claiming an actual system . . . makes it even less abstract because it's not just a method . . . it is even more

intimately connected to the computer, as it is the system.").

Based on the failure of ABL's briefing to contest SmartGene's characterization of claim 1 of the '786 patent as representative of all claims, the district court found "that the differences between the various method and system claims within the patents-in-dispute are immaterial with respect to whether the patents constitute eligible subject matter under 35 U.S.C. § 101" and, therefore, analyzed only claim 1 of the '786 patent. *SmartGene, Inc.*, 852 F. Supp. 2d at 45-46. The district court concluded that the claim does "no more than describe . . . an abstract mental process engaged in routinely, either entirely within a physician's mind, or potentially aided by other resources in the treatment of patients." *Id.* at 55. The court held claim 1 of the '786 patent, and hence all asserted claims, "invalid" under section 101. *Id.* at 66.

ABL moved for reconsideration. The court denied the motion. It again reiterated that ABL had not contested the representativeness of claim 1 of the '786 patent in its papers opposing summary judgment and, even at the argument on the motion, had not provided any reason for distinguishing other claims from that one. *SmartGene*, 915 F. Supp. 2d at 75-76.

ABL appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

Review of a grant of summary judgment is de novo. *Ohio Willow Wood Co. v. Alps South, LLC*, 735 F.3d 1333, 1341-42 (Fed. Cir. 2013). Patent eligibility under section 101 is an issue of law. *Bancorp Servs., LLC v. Sun Life Assurance Co. of Can.*, 687 F.3d 1266, 1273 (Fed. Cir. 2012).

A

ABL contends that, even if claim 1 of the '786 patent is invalid, the district court erred in invalidating all claims of the two patents on that basis. Neither of ABL's arguments to support that contention has merit.

First, SmartGene unambiguously moved for summary judgment that all claims of the '786 and '988 patents—not, as ABL argues, only claims 1 and 23 of both—were ineligible under section 101. *See SmartGene*, 915 F. Supp. 2d at 73-74 ("[ABL's] assertions in this regard are patently false . . . . SmartGene consistently asserted that it was contesting the validity of *all of the claims* in both the '786 patent and the '988 patent."). At the outset of this action, SmartGene's complaint sought a declaratory judgment that the '786 and '988 patents, without limitation, were ineligible for patent protection. *See* J.A. 60-61. Although ABL *counter*claimed for infringement of only claims 1 and 23 of each patent, SmartGene never narrowed the scope of its declaratory-judgment claims. When later moving for summary judgment, SmartGene expressly placed all claims at issue, asserting that "the *patents-in-suit* are facially invalid as directed to non-statutory subject matter under 35 U.S.C. § 101." J.A. 366 (emphasis added); *see also* J.A. 374 (arguing in briefing accompanying the summary-judgment motion that "all of the claims of the patents-in-suit are invalid"). Thus, the district court did not err in addressing all claims of the '786 and '988 patents.

We see no jurisdictional barrier to the district court's ruling on all of the claims. The eligibility of all claims under section 101 presented a case or controversy. ABL never argued that the district court lacked jurisdiction over any of SmartGene's claims. And ABL had sued SmartGene in an earlier action, in Texas, alleging infringement of both patents without limitation to particular claims. Given that complaint, we see no reason for

concluding that SmartGene failed to meet its "burden of establishing the existence of an actual case or controversy" as to all claims of both patents. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 140 (2007).

Second, not only were all claims properly before the district court on summary judgment, but the court could properly rest its judgment on its analysis of claim 1 of the '786 patent. In its summary-judgment filings, SmartGene expressly asserted that claim 1 was representative and that any differences between the claims are immaterial under section 101, *see* J.A. 381, and ABL did not dispute that characterization in its briefing. It is well established that arguments that are not appropriately developed in a party's briefing may be deemed waived. *See, e.g., SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006) (collecting cases). During the summary-judgment oral argument, ABL alluded to "a different analysis as to the abstractness issue" between system and method claims. J.A. 2789-91. But the district court acted well within its discretion in concluding, as it explained on reconsideration, that such passing assertions did not amount to a developed argument for different treatment, especially in light of ABL's complete failure to raise the issue in its briefing. We view the court's ruling as essentially one that ABL forfeited any argument that any patent claims here are to be treated differently from claim 1 of the '786 patent.

B

The district court correctly held that the claim 1 method falls outside the eligibility standards of section 101 as that provision has been construed. This conclusion follows from *CyberSource Corp. v. Retail Decisions, Inc.*, where, based on earlier precedents, this court held that section 101 did not embrace a process defined simply as using a computer to perform a series of mental steps that people, aware of each step, can and regularly do perform

in their heads.  654 F.3d 1366, 1373 (Fed. Cir. 2011); *see also In re Grams*, 888 F.2d 835, 840-41 (Fed. Cir. 1989); *In re Meyer*, 688 F.2d 789, 794-95 (C.C.P.A. 1982).  As *CyberSource* explains, those precedents rest on Supreme Court decisions indicating that section 101 covers neither "mental processes"—associated with or as part of a category of "abstract ideas"—nor processes that merely invoke a computer and its basic functionality for implementing such mental processes, without specifying even arguably new physical components or specifying processes defined other than by the mentally performable steps.  *See Gottschalk v. Benson*, 409 U.S. 63, 67-68 (1972); *Parker v. Flook*, 437 U.S. 584, 589 (1978).

Those precedents cover this case.  Claim 1 does no more than call on a "computing device," with basic functionality for comparing stored and input data and rules, to do what doctors do routinely.  In three steps, claim 1 defines a "method for guiding the selection of a therapeutic treatment regimen for a patient with a known disease or medical condition."  '786 patent, col. 17, lines 49-51.  The method (1) "provid[es] patient information to a computing device" having routine input, memory, look-up, comparison, and output capabilities and that (2) "generat[es] . . . a ranked listing of available therapeutic treatment regimens" and (3) "generat[es] . . . advisory information for one or more therapeutic treatment regimens in said ranked listing."  *Id*. at col. 17, line 52, through col. 18, line 3.  Claim 1 places only very broad limitations on a "computing device": it must contain—like a doctor's mind—a set of "expert rules for evaluating and selecting" from a stored "plurality of different therapeutic treatment regimens," as well as "advisory information useful for the treatment of a patient with different constituents of said different therapeutic treatment regimens."  *Id*. at col. 17, lines 54-64.

Like the processes claimed in *Benson*, the process of claim 1 "can be . . . performed without a computer" or,

alternatively, "can be carried out in existing computers long in use, no new machinery being necessary." 409 U.S. at 67. The claim does not purport to identify new computer hardware: it assumes the availability of physical components for input, memory, look-up, comparison, and output. Nor does it purport to identify any steps beyond those which doctors routinely and consciously perform. Our ruling is limited to the circumstances presented here, in which every step is a familiar part of the conscious process that doctors can and do perform in their heads.

The Supreme Court's post-*CyberSource* decision in *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289 (2012), reinforces the application of *CyberSource* to decide the present case. The Supreme Court in *Mayo*, though addressing a case involving the "law of nature" exclusion from section 101, recognized that "mental processes" and "abstract ideas" (whatever may be the precise definition and relation of those concepts) are excluded from section 101. *See* 132 S. Ct. at 1289, 1293, 1297-98 (quotation marks omitted). Whatever the boundaries of the "abstract ideas" category, the claim at issue here involves a mental process excluded from section 101: the mental steps of comparing new and stored information and using rules to identify medical options.

*Mayo* demanded that, when a claim involves an abstract idea (or, in *Mayo* itself, a law of nature), eligibility under section 101 requires that the claim involve "enough" else—applying the idea in the realm of tangible physical objects (for product claims) or physical actions (for process claims)—that is beyond "well-understood, routine, conventional activity." 132 S. Ct. at 1294, 1298, 1299. The claim here does not do so. It calls on a computer to do nothing that is even arguably an advance in physical implementations of routine mental information-comparison and rule-application processes. In this context, the concern about preempting public use of certain

kinds of knowledge, emphasized in *Mayo*, is a grave one. *See id.* at 1301-02.

Our decisions since *Mayo* do not undermine *Cyber-Source* or its application here. None of those decisions calls for validation of a claim, like the present one, to familiar mental steps performed by or with a computer, without more of significance.

Both the court's decision in *Bancorp, supra*, and its decision in *CLS Bank Int'l v. Alice Corp. Pty*, 717 F.3d 1269 (Fed. Cir. 2013) (en banc), *cert. granted*, 134 S. Ct. 734 (2013), insofar as they involved process claims like the claim here at issue, invalidated certain claims—which involved use of a computer, not defined other than by its function, to perform familiar steps of creating, recording, and altering of certain intangible entities (contracts such as insurance policies or financial obligations). *Accenture Global Servs., GmbH v. Guidewire Software, Inc.,* 728 F.3d 1336 (Fed. Cir. 2013), is similar. *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335 (Fed. Cir. 2013), reversed an invalidation on a motion to dismiss, but the process claimed there was materially different from the one at issue here. Although the parties did not dispute the involvement of an "abstract idea"—getting a kind of confirmation that a viewer has watched advertising as a precondition to sending the viewer desired program-ming—the process at issue in *Ultramercial* did not involve "mere mental steps." *See* 722 F.3d at 1349 n.2. And the claims involved a recitation of specifics of computer net-works beyond what the present case involves. *See id.* at 1350.

CONCLUSION

For these reasons, the judgment of the district court is affirmed.

**AFFIRMED**