# United States Court of Appeals
# for the Federal Circuit

---

**BUYSAFE, INC.,**
*Plaintiff-Appellant,*

v.

**GOOGLE, INC.,**
*Defendant-Appellee.*

---

2013-1575

---

Appeal from the United States District Court for the District of Delaware in No. 11-CV-1282, Judge Leonard P. Stark.

---

Decided: September 3, 2014

---

STEPHEN M. HANKINS, Schiff Hardin LLP, of San Francisco, California, argued for plaintiff-appellant. With him on the brief was ALISON L. MADDEFORD. Of counsel on the brief were BRIAN D. SIFF and JAMES E. HANFT, of New York, New York, and DONALD E. STOUT, Antonelli, Terry, Stout & Kraus, LLP, of Arlington, Virginia.

ANDREW J. PINCUS, Mayer Brown, LLP, of Washington, DC, argued for defendant-appellee. With him on the brief were BRIAN A. ROSENTHAL, ANN MARIE DUFFY, and PAUL W. HUGHES. Of counsel on the brief were A. JOHN P.

MANCINI and ALLISON LEVINE STILLMAN, of New York,
New York.

———————

Before TARANTO and HUGHES, *Circuit Judges.**

TARANTO, *Circuit Judge.*

This case involves claims directed to creating familiar
commercial arrangements by use of computers and net-
works. The district court held the asserted claims invalid
because they cover subject matter ineligible for patenting
under 35 U.S.C. § 101. *buySAFE, Inc. v. Google, Inc.*, 964
F. Supp. 2d 331 (D. Del. 2013). Under the approach to
section 101 affirmed by the Supreme Court in the recent
decision in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S.
Ct. 2347 (2014), the district court's holding is correct.

## BACKGROUND

U.S. Patent No. 7,644,019, owned by buySAFE, Inc.,
claims methods and machine-readable media encoded to
perform steps for guaranteeing a party's performance of
its online transaction. In 2011, buySAFE sued Google,
Inc., in the District of Delaware, alleging that Google
infringes claims 1, 14, 39, and 44 of the '019 patent.
Google moved for judgment on the pleadings, arguing that
the asserted claims are invalid under 35 U.S.C. § 101.

Claim 1 is an independent method claim, with claim
14 dependent on it. Claim 39 is an independent claim to a
computer-readable medium encoded with instructions to
carry out the Claim 1 method, with claim 44 a dependent
claim bearing the same relation to claim 39 as claim 14
does to claim 1. The parties agreed that the analysis of

———————

*    Randall R. Rader, who retired from the position of
Circuit Judge on June 30, 2014, was a member of the
panel but did not participate in this decision.

claims 1 and 14 would control the analysis of claims 39 and 44, so we discuss only the method claims here.

Claim 1 recites a method in which (1) a computer operated by the provider of a safe transaction service receives a request for a performance guarantee for an "online commercial transaction"; (2) the computer processes the request by underwriting the requesting party in order to provide the transaction guarantee service; and (3) the computer offers, via a "computer network," a transaction guaranty that binds to the transaction upon the closing of the transaction. Specifically:

> 1.  A method, comprising:
>
>   receiving, by at least one computer application program running on a computer of a safe transaction service provider, a request from a first party for obtaining a transaction performance guaranty service with respect to an online commercial transaction following closing of the online commercial transaction;
>
>   processing, by at least one computer application program running on the safe transaction service provider computer, the request by underwriting the first party in order to provide the transaction performance guaranty service to the first party,
>
>   wherein the computer of the safe transaction service provider offers, via a computer network, the transaction performance guaranty service that binds a transaction performance guaranty to the online commercial transaction involving the first party to guarantee the performance of the first party following closing of the online commercial transaction.

Claim 14 narrows the claim 1 method to a guaranty "in one form of: a surety bond; a specialized bank guaranty; a

specialized insurance policy; and a safe transaction guaranty."

The district court granted Google's motion for judgment on the pleadings, holding that the asserted claims fall outside section 101. The court concluded that the patent "describes a well-known, and widely-understood concept—a third party guarantee of a sales transaction— and then applied that concept using conventional computer technology and the Internet." *buySAFE*, 964 F. Supp. 2d at 335–36. It makes no difference, the court added, that the guarantee of the underlying transaction attaches only when that transaction closes. *Id.* at 336. Moreover, the claimed computer "is used only for processing—a basic function of any general purpose computer." *Id.* Finally, the court explained, the claims "do not require specific programming" and are not "tied to any particular machine." *Id.* In these circumstances, the court ruled, the claims are outside section 101.

We have jurisdiction over buySAFE's appeal under 28 U.S.C. § 1295(a)(1). We review the grant of judgment on the pleadings de novo. *See Allergan, Inc. v. Athena Cosmetics, Inc.*, 640 F.3d 1377, 1380 (Fed. Cir. 2011); *M.R. v. Ridley School Dist.*, 744 F.3d 112, 117 (3d Cir. 2014).

DISCUSSION

The Supreme Court has "interpreted § 101 and its predecessors . . . for more than 150 years" to "'contain[] an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable.'" *Alice*, 134 S. Ct. at 2354, quoting *Association for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013) (further internal quotation marks and brackets omitted). Under that interpretation, laws of nature, natural phenomena, and abstract ideas, no matter how "[g]roundbreaking, innovative, or even brilliant," *Myriad*, 133 S. Ct. at 2117, are outside what the statute means by "new and useful process, machine, manufacture, or com-

position of matter," 35 U.S.C. § 101. *See Alice*, 134 S. Ct. at 2357; *Myriad,* 133 S. Ct. at 2116, 2117.

In identifying the three types of excluded matter, the Court has explained that the underlying "concern" is "'that patent law not inhibit further discovery by improperly tying up the future use' of these building blocks of human ingenuity." *Alice*, 134 S. Ct. at 2354, quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1301 (2012). The Court has invoked the concern to justify and inform understanding of, but not to identify section 101 exclusions beyond, the three recognized categories.

In defining the excluded categories, the Court has ruled that the exclusion applies if a claim involves a natural law or phenomenon or abstract idea, even if the particular natural law or phenomenon or abstract idea at issue is narrow. *Mayo*, 132 S. Ct. at 1303. The Court in *Mayo* rejected the contention that the very narrow scope of the natural law at issue was a reason to find patent eligibility, explaining the point with reference to both natural laws and one kind of abstract idea, namely, mathematical concepts.

> [O]ur cases have not distinguished among different laws of nature according to whether or not the principles they embody are sufficiently narrow. *See, e.g.*, *[Parker v.] Flook*, 437 U.S. 584 [(1978)] (holding narrow mathematical formula unpatentable). And this is understandable. Courts and judges are not institutionally well suited to making the kinds of judgments needed to distinguish among different laws of nature. And so the cases have endorsed a bright-line prohibition against patenting laws of nature, mathematical formulas and the like, which serves as a somewhat more easily administered proxy for the underlying 'building-block' concern.

*Mayo*, 132 S. Ct. at 1303.

Based on the three implicit exclusions, the Court has created a framework for identifying claims that fall outside section 101. *Alice*, 134 S. Ct. at 2355; *Mayo*, 132 S. Ct. at 1296–97. A claim that directly reads on matter in the three identified categories is outside section 101. *Mayo*, 132 S. Ct. at 1293. But the provision also excludes the subject matter of certain claims that by their terms read on a human-made physical thing ("machine, manufacture, or composition of matter") or a human-controlled series of physical acts ("process") rather than laws of nature, natural phenomena, and abstract ideas. Such a claim falls outside section 101 if (a) it is "directed to" matter in one of the three excluded categories and (b) "the additional elements" do not supply an "inventive concept" in the physical realm of things and acts—a "new and useful application" of the ineligible matter in the physical realm—that ensures that the patent is on something "significantly more than" the ineligible matter itself. *Alice*, 134 S. Ct. at 2355, 2357 (internal quotation marks omitted); *see Mayo*, 132 S. Ct. at 1294, 1299, 1300. This two-stage inquiry requires examination of claim elements "both individually and 'as an ordered combination.'" *Alice*, 134 S. Ct. at 2355.

Several decisions of the Court have involved the "abstract idea" category, which is at issue here. Two aspects of those decisions are important for present purposes: what type of matter the Court has held to come within the category of "abstract idea"; and what invocations of a computer in a claim that involves such an abstract idea are insufficient to pass the test of an inventive concept in the application of such an idea.

As to the first question: The relevant Supreme Court cases are those which find an abstract idea in certain arrangements involving contractual relations, which are intangible entities. *Bilski v. Kappos*, 561 U.S. 593 (2010),

involved a method of entering into contracts to hedge risk in commodity prices, and *Alice* involved methods and systems for "exchanging financial obligations between two parties using a third-party intermediary to mitigate settlement risk," *Alice*, 134 S. Ct. at 2356. More narrowly, the Court in both cases relied on the fact that the contractual relations at issue constituted "a fundamental economic practice long prevalent in our system of commerce." *Bilski*, 561 U.S. at 611; *see Alice*, 134 S. Ct. at 2356, 2357.

In simultaneously rejecting a general business-method exception to patent eligibility and finding the hedging claims invalid, moreover, *Bilski* makes clear that the recognition that the formation or manipulation of economic relations may involve an abstract idea does not amount to creation of a business-method exception. The required section 101 inquiry has a second step beyond identification of an abstract idea. If enough extra is included in a claim, it passes muster under section 101 even if it amounts to a "business method."

As to the second question: The Court in *Alice* made clear that a claim directed to an abstract idea does not move into section 101 eligibility territory by "merely requir[ing] generic computer implementation." *Alice*, 134 S. Ct. at 2357.[1] In so holding, the Court in *Alice* relied on

---

[1] The Court in *Alice* noted that in *Diamond v. Diehr*, 450 U.S. 175 (1981), the patent applicants added more than a computer to a mathematical equation in claiming an arguably "inventive application" in the technology of curing synthetic rubber. 134 S. Ct. at 2358 (internal quotation marks omitted). *Diehr* explains that the claimed contribution to the art was the step of "constantly measuring the actual temperature inside the mold" for the synthetic rubber products. 450 U.S. at 178, 179 n.5.

*Mayo* for the proposition that "'[s]imply appending conventional steps, specified at a high level of generality,' was not '*enough*' to supply an '"inventive concept."'" *Id.* (quoting *Mayo*, 132 S. Ct. at 1300, 1297, 1294). Neither "attempting to limit the use of [the idea] to a particular technological environment" nor a "wholly generic computer implementation" is sufficient. *Id.* at 2358 (internal quotation marks omitted). The Court found nothing sufficient in Alice Corp.'s claims.

The Court explained that the method claims in *Alice* invoke "the use of a computer to create electronic records, track multiple transactions, and issue simultaneous instructions," *id.* at 2359; "electronic recordkeeping," *id.*; and "the use of a computer to obtain data, adjust account balances, and issue automated instructions," *id.* They "do not, for example, purport to improve the functioning of the computer itself. See [*CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 717 F.3d 1269, 1286 (Fed. Cir. 2013) (Lourie, J., concurring)] ('There is no specific or limiting recitation of . . . improved computer technology . . .'); Brief for United States as *Amicus Curiae* 28–30." *Alice*, 134 S. Ct. at 2359. They do not "effect an improvement in any other technology or technical field," and they merely invoke "some unspecified, generic computer." *Id.* at 2359–60. The system claims in *Alice* are "no different," the Court added, explaining that they invoke a "'data processing system' with a 'communications controller' and 'data storage unit,'" which are "purely functional and generic" components for "performing the basic calculation, storage, and transmission functions required by the method claims." *Id.* at 2360. Finally, the Court viewed the claims to a computer-readable medium for the methods as indistinguishable for section 101 purposes. *Id.*

Given the new Supreme Court authority in this delicate area, and the simplicity of the present case under that authority, there is no need to parse our own precedents here. The claims in this case do not push or even

test the boundaries of the Supreme Court precedents under section 101. The claims are squarely about creating a contractual relationship—a "transaction performance guaranty"—that is beyond question of ancient lineage. *See* Willis D. Morgan, *The History and Economics of Suretyship*, 12 Cornell L.Q. 153 (1927). The dependent claims' narrowing to particular types of such relationships, themselves familiar, does not change the analysis. This kind of narrowing of such long-familiar commercial transactions does not make the idea non-abstract for section 101 purposes. *See Mayo*, 132 S. Ct. at 1301. The claims thus are directed to an abstract idea.

The claims' invocation of computers adds no inventive concept. The computer functionality is generic—indeed, quite limited: a computer receives a request for a guarantee and transmits an offer of guarantee in return. There is no further detail. That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive. The computers in *Alice* were receiving and sending information over networks connecting the intermediary to the other institutions involved, and the Court found the claimed role of the computers insufficient. *See also CyberSource Corp. v. Retail Decisions, Inc.,* 654 F.3d 1366, 1370 (Fed. Cir. 2011) (use of Internet to verify credit-card transaction does not add enough to abstract idea of verifying the transaction). And it likewise cannot be enough that the transactions being guaranteed are themselves online transactions. At best, that narrowing is an "attempt[] to limit the use" of the abstract guarantee idea "to a particular technological environment," which has long been held insufficient to save a claim in this context. *See Alice*, 134 S. Ct. at 2358; *Mayo*, 132 S. Ct. at 1294; *Bilski*, 561 U.S. at 610–11; *Diehr*, 450 U.S. at 191.

In short, with the approach to this kind of section 101 issue clarified by *Alice*, it is a straightforward matter to conclude that the claims in this case are invalid.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

**AFFIRMED**