NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**INNOVATION SCIENCES, LLC,**
*Plaintiff-Appellant*

**v.**

**AMAZON.COM, INC.,**
*Defendant-Appellee*

---

2018-1495

---

Appeal from the United States District Court for the Eastern District of Virginia in No. 1:16-cv-00861-LO-MSN, Judge Liam O'Grady.

---

Decided: July 2, 2019

---

DONALD LEE JACKSON, Davidson Berquist Jackson & Gowdey, LLP, McLean, VA, argued for plaintiff-appellant. Also represented by JAMES DANIEL BERQUIST.

J. DAVID HADDEN, Fenwick & West, LLP, Mountain View, CA, argued for defendant-appellee. Also represented by SAINA S. SHAMILOV, RAVI RAGAVENDRA RANGANATH; TODD RICHARD GREGORIAN, San Francisco, CA.

---

Before LOURIE, MOORE, and CHEN, *Circuit Judges.*

MOORE, *Circuit Judge.*

Innovation Sciences, LLC,[1] sued Amazon.com, Inc., for infringing claims of U.S. Reissue Patent No. 46,140, U.S. Patent No. 9,369,844, and U.S. Patent No. 8,135,398. The District Court for the Eastern District of Virginia held that the asserted claim of the '140 patent was ineligible under 35 U.S.C. § 101, the parties stipulated to noninfringement as to the asserted claims of the '844 patent, and the district court granted summary judgment of noninfringement as to the asserted claims of the '398 patent. For the following reasons, we affirm as to the '398 and '140 patents and affirm-in-part, vacate-in-part, and remand the stipulated judgment of noninfringement as to the '844 patent.

## DISCUSSION

### I. The '140 Patent

The '140 patent is titled "Method and System for Conducting Business in a Transnational E-Commerce Network." The specification states that the invention seeks to "overcome[] the lack of adequately secure encryption and decryption in a merchant server to which a buyer wishes to provide credit card information for the purchase of products posted on such merchant server." '140 patent at 2:63–67. It describes how "a conventional Internet transaction system having adequate credit card information security" carries out secure Internet transactions. *Id.* at 3:60–4:17. It contrasts this system to one in which products are listed on a server without adequate transaction security. When a buyer wishes to purchase a product listed on such a

---

[1]    Virginia Innovations Sciences, Inc., the owner of the patents when this suit began, merged into Innovation Sciences, LLC, while this appeal was pending. We refer to the patent owner as Innovation Sciences throughout.

server, the '140 patent says to shift the buyer to a separate payment server with adequate transaction security to securely transmit the payment information. *Id.* at 4:18–59. Claim 17 is the only claim at issue. It recites:

17. An online method for a payment server to support online buying over the Internet, the online method comprising:

receiving, at the payment server, credit card payment information transmitted from a buyer for payment of one or more items identified for purchase from a website listing the items, wherein the credit card payment information is received after online communication of the buyer has been switched from the website listing the items to a website supported by the payment server, wherein the switching of the online communication of the buyer is after an indication from the buyer to buy the one or more of the items;

sending the credit card payment information to an established financial channel;

receiving a credit card payment processing decision from the established financial channel; and

sending credit card payment confirmation information;

wherein:

transmission of information about the items for purchase between a server supporting the website listing the items and the buyer, before occurrence of the indication to buy, is less secure than transmission, from the buyer, of the credit card

payment information, the transmission of the credit card payment information being performed under a security protocol for encryption of the credit card payment information, said security protocol providing at least 128 bit encryption for the credit card payment information;

the payment server has a respective IP address different from a respective IP address of the server supporting the website listing the items;

the sending of the credit card payment confirmation information updates the server supporting the website listing the items, with respect to the purchase of the one or more items identified by the buyer, in support of a real-time purchasing/sales environment on the website listing the items;

the server supporting the website listing the items is in one of a first nation state or a second nation state; and

the payment server is in the first nation state.

'140 patent at Claim 17.

"We review the grant of summary judgment under the law of the regional circuit in which the district court sits," here the Fourth Circuit. *Classen Immunotherapies, Inc. v. Elan Pharm., Inc.*, 786 F.3d 892, 896 (Fed. Cir. 2015). The Fourth Circuit reviews a grant of summary judgment de novo, "applying the same legal standards as the district court and viewing all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party." *Grutzmacher v. Howard Cty.*, 851 F.3d 332, 341 (4th Cir. 2017). Eligibility under § 101 is a question of law, based

on underlying facts. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1163 (Fed. Cir. 2018).

"Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof," may obtain a patent. 35 U.S.C. § 101. As a judicially created exception to this provision, "[l]aws of nature, natural phenomena, and abstract ideas are not patent eligible." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (quoting *Assoc. for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013)). All inventions at some level "embody, use, reflect, rest upon, or apply" these concepts, but if an invention applies these concepts to a new and useful end, it is patent eligible. *Id.* at 217. The Supreme Court has established a two-step framework for "distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Id.* "First, we determine whether the claims at issue are directed to" a patent-ineligible concept. *Id.* If so, "we consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 78–79 (2012)).

The district court granted summary judgment that this claim was ineligible under § 101. At *Alice* step one, the district court concluded that claim 17 is directed to "the result of securely processing a credit card transaction with a payment server," an abstract idea. J.A. 59–60. At *Alice* step two, the district court concluded that the claim lacked a sufficient inventive concept because it only recites "an 'abstract functional description devoid of technical explanation as to how to implement the invention.'" J.A. 61 (quoting *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 615 (Fed. Cir. 2015)). The district court rejected Innovation Sciences' argument that an inventive concept is

found in the limitation stating that "the buyer has been switched from the website listing the items to a website supported by a payment," because the claim only recites the "switching" result. J.A. 60–61. Innovation Sciences did not identify any "algorithm, computer program, or mechanism for performing the switch." J.A. 61.

## A

Innovation Sciences argues the district court improperly placed the burden on it to prove eligibility. It points to the portion of the district court's opinion stating that it "has not presented sufficient evidence to show that the '140 patent discloses a means of accomplishing switching from the website listing the items to a website supported by the payment server." J.A. 58. We disagree that the district court shifted the burden.

In the Fourth Circuit, "it is ultimately the nonmovant's burden to persuade [the court] that there is . . . a dispute of material fact." *CoreTel Va., LLC v. Verizon Va., LLC*, 752 F.3d 364, 370 (4th Cir. 2014). "[M]erely conclusory allegations or speculation" is not enough. *Id.* This portion of the district court's opinion restates its position during the claim construction stage that the patent "lacked detail regarding the shift between servers." J.A. 58. The district court was simply stating that Innovation Sciences did not introduce evidence sufficient to create a genuine dispute of material fact to this point.

## B

At *Alice* step one, Innovation Sciences argues claim 17 is directed to an improvement in an online payment processing system that allows merchants to overcome the problem of inadequate security for the transmission of payment information. It argues that by switching the online communication between the buyer and merchant to a secure communication channel for transmission of payment information, the invention implements a new technological

solution. It points to the specification's disclosure of how the system functions as evidence that "the invention relates to a novel dedicated payment server logically and physically separated from a conventional merchant server for increased security during online transactions." Appellant's Br. 57 (citing '140 patent at 4:31–44, Figs. 2, 4A–4B).

We agree with the district court that claim 17 is directed to the abstract idea of securely processing a credit card transaction with a payment server. The claim recites, in merely functional, result-oriented terms, receiving credit card payment information at a server different from the server on which the item for purchase is listed, sending the payment information "to an established financial channel," receiving a "processing decision" from that channel, sending payment confirmation, and updating the server supporting the website listing the item that the item was purchased. *See Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1345 (Fed. Cir. 2018) (holding that a "broad, result-oriented" construction of a term encompassed a patent-ineligible abstract concept rather than a technical improvement because "[i]nstead of claiming a solution for producing that result, the claim in effect encompasses all solutions"). "This ordered combination of steps recites an abstraction—an idea, having no particular concrete or tangible form." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014). The recitation of servers and an established financial channel serves to "limit[] the field of use of the abstract idea to a particular existing technological environment," but it "does not render the claims any less abstract." *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1259 (Fed. Cir. 2016).

The fact that communication is "switched" from a website hosted on one server to a website hosted on another server with better security does not mean the invention is directed to "a specific improvement in the capabilities of computing devices." *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1361 (Fed. Cir. 2018). The

invention does not purport to improve the payment server or the server on which the item for purchase is listed. Instead, it simply claims the idea of switching to a more secure server for payment processing. Neither the claims nor the specification recite any specific way to carry out such a switch. *See* '140 patent at 4:33–39 ("When . . . the buyer indicates a desire to submit credit card information, the buyer is shifted to the payment server 33 for direct communication therewith for entry of credit card information onto the secure transaction system.").

## C

At *Alice* step two, Innovation Sciences argues claim 17 includes an inventive concept sufficient to transform the abstract idea into a patent-eligible application. It points to the elements associated with the switching limitation as the inventive concept. It also asserts that the district court lacked a sufficient factual basis to determine that the claims lacked an inventive concept.

We agree with the district court that claim 17 lacks an inventive concept. The claimed steps beginning with the transmission of the credit card payment information through the completion of the purchase are the same as those used in "a conventional Internet transaction system having adequate credit card information security," as the specification admits. *See* '140 patent at 3:60–4:17; *see also id.* at 2:6–31. There is no inventive concept in the claim's use of a generic payment server "to perform well-understood, routine, and conventional activities commonly used in industry." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014). The switching from a less secure server to a more secure server similarly does not provide an inventive concept. The claim seeks to capture the broad concept of switching to a more secure server, rather than a specific way to do so. "[T]ransformation into a patent-eligible application requires more than simply stating the abstract

idea while adding the words 'apply it.'" *Alice*, 573 U.S. at 221 (internal quotation marks omitted).

We do not agree that factual issues preclude summary judgment here. The specification admits that merchant servers for carrying out a secure transaction were conventional. Innovation Sciences points to no evidence that disputes this fact. Nor does it specify what facts are purportedly in dispute, arguing generally that the *Alice* step two determination "presents triable issues of fact as to inventiveness." Appellant's Br. 63. But *Alice* step two is question of law, with underlying factual determinations that may inform the legal determination. *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018). Here, we see no genuine disputes of material fact. We therefore hold that claim 17 is ineligible under § 101.

## II. The '844 Patent

The '844 patent relates to the "wireless management of tasks and corresponding alerts" based on "wireless delivery of alerts to overcome the problem of estimating when the task requires completion." '844 patent at 9:55–62. Innovation Sciences asserted claims 28–60 of the '844 patent. Claims 28, 35, and 52 are the independent claims at issue. Claim 28 is to a "wireless device" and recites:

> 28. A wireless device configured to facilitate electronic communication of information, the wireless device comprising:
>
> > a processor;
> >
> > a wireless radio chip containing information of a unique identifier corresponding to the wireless device;
> >
> > a memory configured to store program code that includes instructions executable by said processor, said instructions comprising:

instructions for transmitting, through a wireless transmission channel, an item status signal to provide information regarding an updated condition of a merchandise,

wherein the wireless transmission channel is established in a local wireless communication network in response to an indication of the updated condition and the wireless transmission channel is established for transmission of the item status signal by the wireless device; and

wherein the unique identifier corresponding to the wireless device is recognized during a processing of a purchase request for the merchandise regarding the updated condition based on a successful transmission of the item status signal;

wherein the purchase request for the merchandise is identified based on recognition of the unique identifier;

wherein information of a user account is communicated through a communication channel to accommodate the processing of the purchase request; wherein the user account is associated with the wireless device; and wherein the wireless transmission channel is separate from the communication channel, the information of the user account comprising the information for the processing the purchase request; and

wherein the wireless device is designated to transmit the item status signal.

'844 patent at Claim 28. Claims 35 is to a "system for facilitating electronic communication of secure information." It recites:

35. A system for facilitating electronic communication of secure information, the system comprising:

at least one database configured to store information of a user account associated with a wireless signal transmitter,

wherein the wireless signal transmitter is designated to transmit an item status signal to provide information regarding an updated condition of a merchandise;

wherein the item status signal is transmitted through a wireless communication channel from the wireless signal transmitter; the wireless communication channel being established in a local wireless communication network in response to an indication of the updated condition, the wireless communication channel being established for transmission of the item status signal from the wireless signal transmitter;

wherein the system is configured to recognize a unique identifier corresponding to the wireless signal transmitter based on a successful transmission of the item status signal;

wherein the system is further configured to identify a purchase request for the merchandise based on recognition of the unique identifier corresponding to the wireless signal transmitter;

> wherein the information of the user account comprises information for a processing of the purchase request; and

> at least one output interface configured to communicate the information for the processing of the purchase request through a communication channel to accommodate a completion of the processing of the purchase request, the communication channel being separate from the wireless communication channel established for the transmission of the item status signal; and

> wherein the system is configured to update the user account with confirmation information regarding the processing of the purchase request.

*Id.* at Claim 35. Claim 52 is a method claim and is otherwise similar to claim 35.

Following claim construction, Innovation Sciences stipulated that Amazon does not infringe claims 28–60 of the '844 patent and reserved its right to appeal. J.A. 57. On appeal, Innovation Sciences disputes the district court's constructions of four terms: (1) "communicated through a communication channel to accommodate the processing of the purchase request" in claim 28 and corresponding limitations in claims 35 and 52, (2) "item status signal," (3) "an updated condition of a merchandise," and (4) "the merchandise."

Because the district court did not make any subsidiary factual findings, we review its constructions de novo. *David Netzer Consulting Eng'r LLC v. Shell Oil Co.*, 824 F.3d 989, 993 (Fed. Cir. 2016). The words of a claim "are generally given their ordinary and customary meaning," which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the

invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (en banc). To determine the ordinary meaning, we look to the claim language, the specification, the prosecution history, and, where necessary, extrinsic evidence. *Id.* at 1314, 1319.

A. "communicated through a communication channel to accommodate the processing of the purchase request," and related terms

The dispute regarding this term centers around whether claims 28, 35, and 52 each require a wireless device that both transmits an item status signal and communicates information for the processing of a purchase request. The district court concluded that it does. Claim 28 recites "information of a user account is communicated through a communication channel to accommodate the processing of the purchase request." Claim 35 recites "at least one output interface configured to communicate the information for the processing of the purchase request through a communication channel to accommodate a completion of the processing of the purchase request." Claim 52 recites "communicating information for a processing of the purchase request through a communication channel to accommodate a completion of the processing of the purchase request." The district court construed the claimed communication in each of the claims as "transmitting information from the wireless device to process the purchase request." J.A. 44.

Innovation Sciences challenges the district court's treatment of each of claims 28, 35, and 52 as having the same construction. It points out that claim 28 is the only claim of the three that recites a "wireless device." It distinguishes claim 28's recitation of a "wireless device" from claims 35 and 52, which do not specify whether a single device transmits both an item status signal and information for the processing of a purchase request. It argues the district court's construction of claims 35 and 52 excludes the

exemplary embodiment in Fig. 8, which the court recognized.

Amazon contends that the claims envision a single wireless device that monitors the condition of merchandise, sends an item status signal, and sends a purchase request, even if the specification does not disclose such an embodiment. It argues claim 28 requires a "wireless device," and claims 35 and 52 "recite a system and method, respectively, corresponding to the device claimed by claim 28." Appellee's Br. 39–40. According to Amazon, the "communication channel" must originate from the wireless device because, in describing the "present invention," the specification states that "the wireless HUB establishes a secure communication channel with the user equipment, based upon the recognition of the unique identifier," arguing that "the user equipment" refers to the wireless device. Appellee's Br. 40 (quoting '844 patent at 2:48–54).

We agree with the district court and Amazon that claim 28 is limited to a single "wireless device." The preamble of claim 28 recites "[a] wireless device configured to facilitate electronic communication of information," and the remainder of the claim makes clear that the claim is directed to that wireless device. This is in conflict with what is described in specification, which, as the district court pointed out, "contemplates two separate devices to (1) monitor the merchandise and send status updates and (2) initiate the purchase requests." J.A. 39. The only embodiment that discloses both the monitoring of the merchandise and the initiation of a purchase request occurs in the specification's discussion of Fig. 8. This embodiment discloses a "diaper condition sensing module" ("DCSM") that detects a wet diaper and wirelessly sends a signal to a wireless HUB when the diaper is wet. '844 patent at 9:65–10:32, 12:34–36. The wireless HUB manages the diaper inventory and alerts a user when the inventory is low. *Id.* at 12:20–30, 12:44–46. The user can then carry out a purchase request by directly interfacing with the wireless HUB or using user

equipment, such as a cellular phone, to send the purchase request to the wireless HUB. *Id.* at 12:46–51. This embodiment thus contemplates the use of two devices in its system: a DCSM and user equipment. The district court correctly determined that claim 28 is not directed to this embodiment, as it requires a single "wireless device."

Claims 35 and 52, however, are system and method claims, respectively, and are not so limited. They do not specifically recite the "wireless device" limitation that the district court included in its claim construction. Instead, they recite a "wireless signal transmitter" that transmits an item status signal and an unknown component, having an "output interface" in the case of claim 35, that communicates the information for the processing of the purchase request through a communication channel. In the context of the diaper embodiment, the wireless signal transmitter is part of the DCSM. *See id.* at Fig. 4. But nothing in the claims or the specification requires a wireless device that both includes the wireless signal transmitter and communicates the information for the processing of the purchase request. Additionally, nothing limits the claimed "communication channel" to the communication channel between the user equipment and wireless HUB discussed in the context of the embodiment in Figs. 3 and 4.

Claims 35 and 52, for example, permit the wireless HUB to communicate the information for the processing of the purchase request. In contrast to claim 28, claims 35 and 52 require that the communication of this information through the communication channel "accommodate[s] a *completion* of the processing of the purchase request." The specification indicates that to "complete the transaction," payment and, in some cases, the shipping address are sent from the wireless HUB to a local merchant server. '844 patent at 12:58–63; *see also id.* at 2:62–67. The specification also permits an embodiment in which the purchase request is made directly from the wireless HUB. *Id.* at 12:48–49 ("When the user is ready to make a purchase, this

may be accommodated via the [wireless HUB]. This purchase request may be made by directly interfacing with the [wireless HUB] . . . ."). Claims 35 and 52 thus do not require "transmitting information *from the wireless device* to process the purchase request," as the district court concluded. J.A. 44 (emphasis added).

The district court rejected this reading of the claims because, in its view, "[t]he specification does not shed any light on the issue of how a human 'interfaces' with the [wireless HUB] without using some sort of equipment." J.A. 44. According to the district court, "a human user would need some sort of digital tool to interface with this device," so the ability to make a purchase request directly from the wireless HUB "does not appear to be grounded in reality." J.A. 44. It thus concluded that "the user must interface with the [wireless HUB] through the user equipment or the DSCM." J.A. 44. The intrinsic evidence does not support this construction.

The specification discusses the wireless HUB in general terms. It may be a kiosk that is located anywhere "that is perceived as convenient and likely to include user traffic." '844 patent at 7:57–61. Alternatively, it could be "configured for usage in locations like homes or hotel rooms" and "may be provided in a smaller device such as part of a Set Top Box." *Id.* at 7:61–65. The specification states that kiosks and set top boxes are both examples of user equipment. *Id.* at 4:33–36. The district court erred in its determination that a user could not directly interface with a wireless HUB, as the specification provides otherwise.

To be sure, the claims are not a model of clarity and stray from the embodiments described in the specification. We do not express an opinion as to whether they satisfy the requirements of § 112. We conclude, however, that the district court erred when it held that claims 35 and 52 require that the same wireless device that transmits an item status

signal also communicates the information for the processing of the purchase request.

### B. "item status signal"

The district court construed an "item status signal" as "a signal conveying information regarding the status of an item." J.A. 31. Innovation Sciences argues that this construction improperly implies that the signal contains some particular content. It argues that the signal need not carry any information other than a unique identifier because its mere existence can convey the necessary information when a sensor only monitors one condition. It points to an embodiment in the specification in which a DCSM uses an RFID tag to transmit an item status signal. But as Amazon points out, "[e]ven if the item status signal of the patent consists of an RFID ID, it reflects the 'item status' of the diaper being monitored by that diaper probe sensor." Appellee's Br. 35. We see no merit to Innovation Sciences' arguments and agree with the district court's construction.

### C. "an updated condition of a merchandise"

The district court construed "an updated condition of a merchandise" as "a detected change in the condition of an item." J.A. 34. Innovation Sciences argues this construction improperly equates updates with changes in a condition. It points to the specification's disclosure that the DCSM may be polled "after a given period of time to ensure that the diaper condition has been updated," '844 patent at 11:47–49, as evidence that detecting an event is not necessarily required to update a status.

We find Innovation Sciences' contentions unpersuasive. In the context of the specification, "an updated condition of a merchandise" means that the condition of the merchandise has changed. The specification only describes sending an item status signal when the condition has changed. *See, e.g.*, *id.* at 3:3–5 ("A sensor detects the condition of the diaper and accommodates a status indication

when the current indication requires an update[].”), 11:26–31 (“The process 700 commences with the DCSM sensor monitoring 702 the diaper condition. When the diaper condition changes, such as when it is wet, the DCSM sensor detects the updated condition of the diaper” and “sends 704 the diaper condition update to the CRC.”). This makes sense in the context of the claims. As a matter of common sense, it is unclear why an item status signal indicating no change in the condition of a merchandise would then prompt a purchase request for the merchandise. We agree with the district court’s construction.

### D. “the merchandise”

The district court construed “the merchandise” as “the specific item for which a change in condition is detected.” J.A. 36. Innovation Sciences argues this construction renders superfluous the language “updated condition of a merchandise.” It argues the plain and ordinary meaning of the term should control. We see no error in the district court’s claim construction. It simply clarifies that the antecedent basis for “the merchandise” is the merchandise for which the item status signal was sent.

### E. Summary

We agree with the district court’s constructions for independent claim 28. Accordingly, we affirm the district court’s judgment of noninfringement with respect to claim 28 and the asserted claims that depend from claim 28. As for independent claims 35 and 52, we agree with the district court as to three of the four claim constructions that Innovation Sciences appealed. Where, as here, the patent owner must show that the accused products satisfy each limitation to prevail on infringement, losing on three of four appealed claim constructions would typically be dispositive. Given the stipulation in this case, however, we must vacate and remand.

Innovation Sciences stipulated to noninfringement and reserved its right to appeal the district court's claim constructions. The stipulation does not make clear whether it is based on one term or all four that were appealed. Counsel for Innovation Sciences was repeatedly prompted to explain how Innovation Sciences could prevail below on infringement under the district court's constructions of "item status signal," "an updated condition of a merchandise," and "the merchandise." He acknowledged that prevailing would be "a challenge," Oral Argument 37:35–42, but maintained that remand was necessary, *id.* at 33:01–12 (Counsel: "Because there wasn't a segregation of which claim term was dispositive—whether it required all of them—I think it has to be remanded to the district court for further consideration."). He held this position without being able to articulate Innovation Sciences' infringement position under the district court's constructions that we affirm. *Id.* at 34:13–36 (Judge: "What would be your infringement theory for [Amazon's] Dash Button when the claim requires the item status signal to provide information about a detection of a change in condition of the merchandise?"; Counsel: "That's, frankly, a hypothetical I haven't considered prior to today."). Because we cannot tell whether our affirmance of three of the four appealed constructions is dispositive, we are left with no choice but to remand to the district court for further proceedings.

## III. The '398 Patent

The '398 patent relates to "providing multimedia content to and from various different devices." '398 patent at 1:47–49. Innovation Sciences asserted claims 1–2, 14, 16, 17, 20, 23–24, 31, 35, 37, 42–43, 47–48, and 53 of the '398 patent. Claims 1 and 14 are the only independent claims asserted. Claim 1 recites:

1. A method for conversion and sending of content to devices, the method comprising:

receiving a multimedia content item originated from a source located outside a home location and destined for a destination device located within the home location, wherein the multimedia content item is received through a wireless communication network and from a wireless terminal device;

converting the multimedia content item for reproduction according to a determined signal format of the destination device; and

sending the converted multimedia content item to the destination device, wherein the destination device is a television, and wherein the sending comprises:

establishing a predetermined channel operatively in communication with the destination device

and transporting the multimedia content item to the destination device via said predetermined channel,

for the destination device to display the multimedia content item in conjunction with a navigational command to the destination device for the predetermined channel.

*Id.* at Claim 1. Claim 14 is a "non-transitory computer readable medium" claim that is otherwise identical to claim 1, except it recites a "designated location" instead of a "home." Following claim construction, the district court granted summary judgment that Amazon does not infringe the asserted claims.

Innovation Sciences challenges the district court's construction of a multimedia content item "destined for a

destination device located within the home/designated location." In construing this term, the district court determined that "the destination device is determined *before* the media content is received by the mobile terminal device." J.A. 12. It construed this term as a multimedia content item "directed to a destination device within the home/designated location." J.A. 15. Innovation Sciences argues that "destination" refers to any device within the home that will ultimately receive the content, not a specific destination device.

We see no error in the district court's construction. Claim 1, which is illustrative, recites "receiving a multimedia content item originated from a source located outside a home location and destined for a destination device located within the home location." The multimedia content item "is received through a wireless communication network and from a wireless terminal device." The next step recites "converting the multimedia content item for reproduction according to a determined signal format of the destination device." The claim thus recites a multimedia content item that passes from outside the home, through a wireless communication network, and through a wireless terminal device before it is "received" at an unspecified conversion module. The claim makes clear that the multimedia content item is "destined for a destination device" as it is transmitted through the wireless communication network. Nothing in the claims or the specification supports Innovation Sciences' argument that the final destination need not be set until it reaches the wireless terminal device. Accordingly, we agree with the district court's construction.

Because this term appears in all of the '398 patent claims at issue and Innovation Sciences does not argue that summary judgment of noninfringement was improper under the district court's construction of this term, our affirmance of this construction is dispositive. We affirm the grant of summary judgment of noninfringement based on the district court's uncontested determination that the

accused products do not satisfy the term "destined for a destination device located within the home/designated location" under the proper construction. We need not reach Innovation Sciences' separate arguments that the district court misconstrued "multimedia content item" and that, even under the district court's construction of "multimedia content item," genuine disputes of material fact exist as to whether the accused products satisfy this term.

## CONCLUSION

We have considered Innovation Sciences' other arguments and find them unpersuasive. We affirm the grant of summary judgment that claim 17 of the '140 patent is ineligible under § 101. We affirm the judgment of noninfringement as to claims 28–34 of the '844 patent, but we vacate the judgment of noninfringement as to claims 35–60 because the stipulation does not specify whether our affirmance of all but one of the appealed constructions is dispositive. We affirm the grant of summary judgment of noninfringement as to claims 1–2, 14, 16, 17, 20, 23–24, 31, 35, 37, 42–43, 47–48, and 53 of the '398 patent.

## AFFIRMED-IN-PART, VACATED-IN-PART, AND REMANDED

### COSTS

Costs to Amazon.