NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**IN RE: MARK ALFRED GREENSTEIN,**
*Appellant*

---

2019-1382

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. 10/492,205.

---

Decided: July 12, 2019

---

MARK ALFRED GREENSTEIN, Bethesda, MD, pro se.

JOSEPH MATAL, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, for appellee Andrei Iancu. Also represented by THOMAS W. KRAUSE, AMY J. NELSON, PHILIP J. WARRICK.

---

Before LOURIE, O'MALLEY, and CHEN, *Circuit Judges.*

CHEN, *Circuit Judge.*

Mark Greenstein seeks review of a Patent Trial and Appeal Board (Board) decision affirming an examiner's rejection of all pending claims of his U.S. Patent Application No. 10/492,205 (the '205 Application) under 35 U.S.C.

§ 101. Because we agree with the Board's decision, we *affirm*.

## BACKGROUND

In 2004, Mr. Greenstein filed the '205 Application, which is generally directed to methods for providing recommendations over the Internet for products or services. SAppx29–30.[1] The specification explains that "the [I]nternet provides a very useful mechanism for individual consumers to purchase or lease product[s] or services," but that "the source of the information related to such purchase/lease decisions may be biased and/or unreliable." '205 Application at p. 2, ll. 20–26. One example of such bias is that "the ranking/order of the information presented by a search engine may be influenced by payments made to the owners of the search engine . . . ." *Id.* at p. 3, ll. 29–31. Thus, "[t]he commercial reality of the Internet can add to the inefficiency and self-interest typical in the selection of products and/or services today." *Id.* at p. 3, ll. 31–33.

The '205 Application's claims purport to address the issue of biased recommendations through the use of an independent third party. Claim 101 is representative:

101. A method for providing recommendations, over the internet, regarding a purchase or lease of goods or services for at least one purchaser or lessor comprising the steps of:

receiving a request regarding the purchase or lease of goods or services;

storing the request in a computerized database;

---

[1] Mr. Greenstein and the Patent Office submitted their own appendices, which will be referred to with the prefixes "Appx" and "SAppx," respectively.

providing data which is independent of at least one person who will profit depending on the decision of the purchaser or lessor;

retrieving from the database information necessary to process the request;

processing the request using software to present a recommendation, the software in a computer which accesses the data which is independent of the at least one person who will profit depending on the decision of the purchaser or lessor;

insuring, using software in a computer, that the data used to arrive at the recommendation are originated by a person who is independent of at least one person who will profit depending on whether the at least one purchaser or lessor purchases or leases the goods or services; and

transmitting via a computer, over the internet, the recommendation by the at least one person who will profit depending on the decision concerning the purchase or lease of goods or services to at least one purchaser or lessor.

'205 Application at claim 101. The claimed invention appears to provide unbiased recommendations by providing independent data, processing it to present a recommendation, and "insuring" that the data is "originated by a person who is independent of at least one person who will profit depending on whether the at least one purchaser or lessor purchases or leases the goods or services." *Id.* According to the specification, the claimed invention "provid[es] a data processing system, originated, approved, reviewed and/or overseen by, or by criteria originated approved, reviewed, overseen and/or established by a person who is independent of the purchasing/leasing transaction(s)…" *Id.* at p. 4, ll. 31–35. The independent person "is generally or totally independent from and unrelated to any other person

who receives compensation in connection with the subject transactions. . . ."). *Id.* at p. 6, ll. 30–33.

The examiner rejected all pending claims under § 101 as being directed to the abstract idea of "providing recommendations for the purchase or lease of goods or services for a purchaser or lessor," which the examiner characterized as a fundamental economic practice. SAppx775–77. Under step two of *Alice*, the examiner found that the claim elements do not provide any "inventive concept" that transforms the abstract idea into a patent-eligible application; rather, the claims require no more than the performance of generic functions that were well-understood, routine, and conventional. *Id.*

Mr. Greenstein appealed the examiner's rejection to the Board. The Board affirmed the examiner's rejection in an initial decision on appeal in May 2018 and a subsequent rehearing decision in November 2018. Appx1–19. Mr. Greenstein appeals the Board's decision. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(A).

DISCUSSION

Patent eligibility under 35 U.S.C. § 101 is a question of law that may contain underlying issues of fact. *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1342 (Fed. Cir. 2018) (citing *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018)). We review an ultimate conclusion on patent eligibility *de novo*. *See id.*

Section 101 allows inventors to obtain patents on "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." § 101. However, "this provision contains an important implicit exception": an inventor may not patent laws of nature, natural phenomena, or abstract ideas. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014). To assess whether a patent claim violates this exception to the terms of § 101, the Supreme Court has set

forth a two-step framework, in which a court determines: (1) whether the claim is "directed to a patent-ineligible concept," *i.e.*, a law of nature, natural phenomenon, or abstract idea, and, if so, (2) whether the elements of the claim, considered "both individually and 'as an ordered combination,'" add enough to "'transform the nature of the claim' into a patent-eligible application." *Id.* at 217 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 78 (2012)).

## A. *Alice* Step One

Reading the claims in light of the specification, the Board observed that the claims at issue, which are directed to insuring that recommendations are "originated by a person who is independent of at least one person who will profit," "solve[] the business/legal/financial problems of conflicts of interest arising from facilitating transactions." Appx5. The Board thus agreed with the Examiner that the claims are directed to the abstract idea of "providing recommendations for the purchase or lease of goods or services for a purchaser or lessor." Appx4–5. As the Board explained, this court has held similar claims on methods of fundamental economic practices to be directed to abstract ideas. Appx6 at n.4; *see also Buysafe, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) (finding claims on "creating a contractual relationship—a 'transaction performance guaranty'" to be abstract); *Intellectual Ventures I LLC v. Capital One Bank (USA),* 792 F.3d 1363, 1367 (Fed. Cir. 2015) (determining that claims were directed to the abstract idea of "tracking financial transactions to determine whether they exceed a pre-set spending limit (i.e., budgeting)").

In *Alice*, the Supreme Court found that claims for mitigating settlement risk in financial transactions using a third-party intermediary to be directed to the abstract idea of intermediated settlement. *Alice*, 573 U.S. at 219. As the government notes, the claims at issue likewise employ an

independent third party to mitigate risk in financial transactions—here, the risk that a purchase recommendation is biased or economically motivated. *See, e.g.*, Appellee's Br. at 6–7; '205 Application at claim 101; SAppx32–34.

Mr. Greenstein argues that the claims solve a problem allegedly unique to the Internet—that the Internet enables "anonymously-sourced, conflicted recommendations" that have no analog in the pre-Internet world. Appellant's Informal Br. at 4, 6, 10. But, as the Board found, the problem of trustworthy recommendations predates the Internet. Appx7 (explaining that Appellants' own specification "describes various existing methods of providing recommendations, including Consumer Reports," which "provide[s] product reviews without conflicts of interest"); *see also* '205 Application at pp. 4, 15.

Even if we assume that the Internet presents a unique problem of trust as Mr. Greenstein argues, the claims do not provide any concrete solution. Instead, they provide functional, results-oriented limitations like others we have held to be directed to abstract ideas. *See Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1356 (Fed. Cir. 2016) ("essentially result-focused, functional character of claim language has been a frequent feature of claims held ineligible under § 101, especially in the area of using generic computer and network technology to carry out economic transactions"); *Interval Licensing,* 896 F.3d at 1345 (finding claim directed to "non-interfering display of two information sets, without any limitation on how to produce that result" to be ineligible). The claimed use of the Internet and generic computer functionality to receive, manipulate, and transmit data serves to "limit[] the field of use of the abstract idea to a particular existing technological environment," but it "does not render the claims any less abstract." *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1259 (Fed. Cir. 2016).

## B. *Alice* Step Two

Nor do the claims recite any transformative inventive concept. It is well-settled that merely placing an abstract idea in the context of a computer does not create a patent-eligible application of that idea. *See Alice*, 573 U.S. at 223–24. In contrast, we have found that software-based claims may include an inventive concept where they provide a technological solution to a technological problem. *See, e.g.*, *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1348–49 (Fed. Cir. 2016) (claiming an improved content filter); *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257–59 (Fed. Cir. 2014) (claiming a hybrid web page that overrides normal hyperlink operation). The claims at issue provide no such technological solution. Mr. Greenstein argues that the claimed invention replaces conventional solutions that provide recommendations from a conflicted person. Appellant's Informal Br. at 8–9. But transmission of such a message (i.e., recommendation) over the Internet does not provide any improvement on how the Internet transmits messages. Nor does it interrupt hyperlink functionality as Mr. Greenstein alleges. Instead, the claims broadly recite results-oriented limitations that invoke the generic use of a computer to store, process, and transmit information. *See Elec. Power Grp.*, 830 F.3d at 1356 (finding no inventive concept in claims which did "not include any requirement for performing the claimed functions of gathering, analyzing and displaying in real time"); *Buysafe*, 765 F.3d at 1355 (receiving request and transmitting offer of guarantee merely generic computer functionality adding no inventive concept).

Mr. Greenstein argues that the claims provide a solution to the problem of "anonymously-sourced, conflicted recommendations" by "insuring" that data used to arrive at the recommendation is independent of at least one person who would profit. Appellant's Informal Br. at 5–6. But the problem of trustworthy recommendations is a business problem, not a technical one. As the Board explained,

Consumer Reports, an organization which was "founded in 1927 to provide product reviews without conflicts of interest," similarly addressed this problem by refusing to accept money or compensation from commercial enterprises. Appx7–8. Moreover, there is no suggestion that the "insuring" step requires anything more than conventional data processing performed by a generic computer. Instead, the claims are broadly directed to the abstract idea of providing recommendations for a purchaser or lessor, without offering a technical solution as to how one would "insure" that the data relied upon originates from a person who is independent of the transaction.[2]

The claims at issue assert a series of generic computer steps to provide purchasing or leasing recommendations for goods or services. To the extent they describe the use of data from an independent source, we have previously explained that this type of data manipulation is not enough to save a claim from ineligibility. *See, e.g.*, *Elec. Power Grp.*, 830 F.3d at 1354–55 (finding claim directed to the abstract idea of "collecting information, analyzing it, and displaying certain results" to be ineligible); *Buysafe*, 765 F.3d

---

[2]   Mr. Greenstein also argues that it would not be possible to perform this "insuring" step without additional limitations of "screening and sourcing." Appellant's Informal Br. at 3. But these limitations are not recited in the claims and Mr. Greenstein offers no support from the specification in support of his arguments. Even assuming the inclusion of "screening and sourcing" limitations, there is nothing to suggest that these are more than merely conventional steps related to the insuring step, performed by a generic computer, and Mr. Greenstein admits that such an implementation is within the common understanding of how a computer would be used to review software data to "insure" that the data is originated by an independent person. *Id.*

at 1356 (generic computer functionality used for "receiving and transmitting information over a network" held ineligible); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (finding claims directed to the abstract idea of "recognizing and storing information from hard copy documents" to be ineligible); *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1084, 1093 (Fed. Cir. 2019) (claimed steps on "routing data gathering, and displaying information" not eligible, despite "recit[ing] a purportedly new arrangement of generic information that assists traders in processing information more quickly")

We have also explained that results-oriented claiming such as that which exists in the '205 Application is not enough to constitute an inventive concept. *See, e.g.*, *Elec. Power Grp.*, 830 F.3d at 1354–56 (finding ineligible "claims so result-focused, so functional, as to effectively cover any solution to an identified problem"). Thus, we conclude that the claims of the '205 Application do not provide any inventive step sufficient to transform the claims into patent-eligible subject matter.

We have considered Mr. Greenstein's remaining arguments and find them unpersuasive. For the foregoing reasons, we conclude that the claims are ineligible under § 101 and *affirm* the decision of the Board.

**AFFIRMED**

COSTS

No costs.